Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas  ◉

McAllen Division

| | | |
|---|---|---|
| Angel Adalberto Alanis Jr | ) | Case No. ___7:25-cv-00393___ |
| _____ | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| TROOPER PABLO PEDROZA, | ) | |
| Texas Department of Public Safety, | ) | |
| ___Badge No. DPS14773,___ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names. Do not include addresses here.)* | | |

Amended  **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

(Non-Prisoner Complaint)

---

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Angel Adalberto Alanis Jr |
| Address | 1107 N Bethel St. |
| | Roma / TX / 78584 |
| | *City* / *State* / *Zip Code* |
| County | Starr |
| Telephone Number | (956) 379-8874 |
| E-Mail Address | a4alaniz@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Pablo Pedroza |
| Job or Title *(if known)* | Texas Department of Public Safety (DPS) State Trooper Pedroza |
| Address | 1414 N Bicentennial Blvd. |
| | McAllen / TX / 78501 |
| | *City* / *State* / *Zip Code* |
| County | Hidalgo |
| Telephone Number | (956) 565-7544 |
| E-Mail Address *(if known)* | |

☑ Individual capacity     ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Address | |
| | *City* / *State* / *Zip Code* |
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☐ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3

    Name

    Job or Title *(if known)*

    Address

|  | City | State | Zip Code |
|---|---|---|---|

    County

    Telephone Number

    E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

Defendant No. 4

    Name

    Job or Title *(if known)*

    Address

|  | City | State | Zip Code |
|---|---|---|---|

    County

    Telephone Number

    E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials? I claim violations of my rights under the Fourth Amendment (unreasonable search and seizure, unlawful

arrest) and the Fourteenth Amendment (due process, fabrication of evidence) of the U.S. Constitution

as detailed in Continuation of Section III – Claims, attached hereto ¶¶ 70–130

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

N/A

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.
Defendant Trooper Pedroza acted under color of state law as a uniformed, on-duty Texas

Department of Public Safety officer performing official duties during all events described in the

complaint.

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

The events giving rise to this lawsuit occurred in Mission, Texas (Hidalgo County), and at the Hidalgo

County Jail in Edinburg, Texas.

B.   What date and approximate time did the events giving rise to your claim(s) occur?
The constitutional violations began on January 20, 2023 and continued through January 28, 2023,

during Plaintiff's 8-day unlawful incarceration. (For fraudulent concealment tolling the statute of

limitations, see ¶55-69 in Continuation of Section III)

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Continuation of Section III, attached hereto ¶1-137.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

IV.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See Continuation of Section IV – Injuries, attached hereto at ¶¶ 138–139.

V.    **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

See Continuation of Section V – Prayer for Relief, attached hereto at ¶¶ 140–150.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:         Aug 26, 2025

Signature of Plaintiff

Printed Name of Plaintiff      Angel Adalberto Alanis Jr

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

                          City                State        Zip Code

Telephone Number

E-mail Address

Print        Save As...        Add Attachment                    Reset

Continuation of III - Civil Action No. 7:25-cv-00393

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

ANGEL ADALBERTO ALANIS,

     Plaintiff,

                                         Civil Action No. 7:25-cv-00393

v.

TROOPER PABLO PEDROZA,

in his individual capacity,

     Defendant.

## FIRST AMENDED COMPLAINT
## (Continuation of Section III)
## (42 U.S.C. § 1983)

### NATURE OF ACTION[1]

This is a civil rights action under 42 U.S.C. § 1983 arising from Defendant Trooper Pablo Pedroza's deliberate fabrication of evidence to manufacture probable cause for an unlawful extension of a traffic stop, warrantless searches, and false arrest of Plaintiff Angel Alanis on January 20, 2023. Synchronized dashcam and bodycam footage, combined with Defendant's own recorded admission at timestamp 32:40 in the patrol car, objectively proves that Defendant falsified claims of "hiding movements" with Plaintiff's left hand by temporally manipulating their placement in

---

[1] All timestamps in this Complaint refer to elapsed time markers (minutes:seconds) on the body-worn camera footage, not time of day or dashcam footage.

his sworn affidavit and reports to suggest they occurred before the search, when in reality they referred to compliant actions during the out-of-vehicle pocket-emptying phase that Defendant himself manufactured through contradictory commands. These fabrications violated Plaintiff's clearly established Fourth and Fourteenth Amendment rights, leading to his unlawful detention, eight days of incarceration, forced medication withdrawal, and a year-long prosecution that ended in dismissal, all while Defendant concealed the violations through sophisticated techniques including pre-angled bodycam positioning and active prevention of exculpatory evidence verification.

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), as it arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Hidalgo County, Texas, within the Southern District of Texas, and Defendant was acting under color of state law in this district.

## II. PARTIES

3. Plaintiff Angel Alanis is a resident of Starr County, Texas. At all relevant times, Plaintiff was a civilian motorist lawfully operating a vehicle on public roads.

4. Defendant Trooper Pablo Pedroza is a Texas Department of Public Safety Trooper. At all relevant times, Defendant was acting under color of state law within the course and scope of his employment. He is sued in his individual capacity.

## III. TIMELINESS OF ACTION

5. This action is timely filed under the doctrine of fraudulent concealment. While the events occurred on January 20, 2023, Defendant's deliberate concealment of his constitutional vi-

olations through falsified reports and manipulated video recording prevented Plaintiff from discovering the claims until June 20, 2025, when unrestricted access to all evidence first became available. The statute of limitations is therefore tolled, as detailed fully below (¶ 55-69).

## IV. Summary of Events

6. On January 20, 2023, Defendant stopped Plaintiff for alleged speeding. From the outset, Defendant's bodycam was angled downward, limiting the footage to partial views and obscuring Plaintiff's exculpatory actions during key moments. The stop concluded at 2:48 when Plaintiff produced his license, but Defendant unlawfully extended it at 3:02 by opening the driver's door without reasonable suspicion. At 3:31, Defendant ordered Plaintiff out and at 3:56 commanded him to empty his pockets, then immediately contradicted this by yelling "get your hand out" (at 3:56 and 4:10) as Plaintiff attempted to empty his pockets. Dashcam footage shows no hiding, blading, or pushing, directly contradicting Defendant's reports that Plaintiff was "moving his left hand behind him" or "attempting to push something away from view."

7. At 5:20, Defendant palpated Plaintiff's back left pocket, feeling a soft plastic baggie of prescribed medication, yet falsely invoked weapon fears to justify handcuffing at 5:48. His actions belied this claim—never calling backup and leaving Plaintiff's cuffed hands over the pocket for 25 seconds (5:53–6:18). His probable cause affidavit vaguely alleged Plaintiff was "hiding something with his left hand" without timing; his investigative report split this across pre- and post-step-out phases; and Defendant's investigative report falsely suggested a pre-search question about "what he had behind him," absent from the footage. All contraband was already on Plaintiff's person before the stop, as confirmed by additional pills found in his shoes at booking, disproving any during-encounter hiding.

8. In the patrol car, Defendant admitted at 32:40—"every time you turned and I asked you... one

Continuation of III - Civil Action No. 7:25-cv-00393

of your hands kept moving around" (referring to Plaintiff's left hand)—confirming the "left hand hiding" narrative arose from manufactured non-compliance during pocket-emptying, not pre-search observation. Defendant further blocked verification of prescription by ordering Plaintiff away from the glovebox at 4:46 and later falsely claimed no prescriptions were found, despite discovering labeled Nardil. This misconduct triggered Plaintiff's panic attack, emotional distress, and diagnosis of Unspecified Trauma and Stressor-Related Disorder, consistent with Defendant's pattern of escalating 29 traffic stops into arrests, 10 involving drugs or weapons.

## V. STATEMENT OF FACTS

### A. The Traffic Stop: Mission Completed at 2:48

9. At approximately 10:00 p.m., Defendant initiated a traffic stop of Plaintiff's vehicle near I-2 FM 494 in Mission, Texas, for alleged speeding.

10. Defendant's dashcam recorded from behind and left of Plaintiff's vehicle. His bodycam was pointed downward at his khakis before recording began, capturing only his lower body and preventing verification of his claimed observations.

11. Defendant approached the passenger side and requested Plaintiff's license and insurance. Plaintiff immediately began searching for his wallet, stating three times that he was looking for it (at 1:55, 2:35, and 2:43).

12. While Plaintiff searched, Defendant stood relaxed with his left leg bent forward, leaning against the vehicle for over one minute—demonstrating no safety concerns or suspicion.

13. At 2:48, Plaintiff located and produced his driver's license, stating "Oh, here it is!" This completed all tasks related to the traffic stop's mission.

14. Defendant's investigative report states Plaintiff "threw [something] quickly into the center console under the radio." The vehicle search would later reveal no contraband in the center

4

Continuation of III - Civil Action No. 7:25-cv-00393

console.

## B. Unlawful Extension and Search Without Justification

15. At 3:02—fourteen seconds after the stop's mission was complete, and despite reporting that by this time he was nervous that Plaintiff may have a weapon—Defendant walked to the driver's side and opened the door without warning, announcement, or consent.

16. Upon opening the door, Defendant observed only a legal Delta-8 THC product on the floorboard. Delta-8 THC was legal in Texas at this time.

17. At 3:31, Defendant ordered Plaintiff out of the vehicle. From this point forward, the dashcam captured Plaintiff's entire body and all hand movements.

18. At 3:46, Defendant commanded Plaintiff to "turn around that way." Plaintiff shifted his torso to the left as commanded. Defendant's investigative report characterizes Plaintiff's movement as "blading his body away from Trooper Pedroza."

19. After already claiming weapon fears in his report, at 3:56, Defendant ordered: "empty your pockets." As Plaintiff began reaching for his pockets, Defendant abruptly commanded: "uh uh uh, get your hand out!"

20. Defendant directed Plaintiff to empty his right pocket first. After Plaintiff complied, he logically proceeded to his left pocket when Defendant again commanded: "no no no, get your hand out!" (approximately 4:10). Dashcam footage shows Plaintiff's left hand remained visible and elevated after this command—directly contradicting Defendant's written claim that Plaintiff "kept moving his left hand behind him."

21. At 4:46, after finding pills originating from Plaintiff's right pockets, Defendant asked about prescriptions. When Plaintiff moved toward his vehicle to retrieve them from the glove compartment, Defendant commanded: "no no no, stay over here"—actively preventing verification that would have established the medications were prescribed.

5

### C. Further Weapon Fear Claims and False Arrest

22. At 5:16, Defendant ordered Plaintiff to turn so he could search Plaintiff's other pocket. Plaintiff complied.

23. At 5:20, Defendant physically palpated Plaintiff's back left pocket with his hand while shining his flashlight on it. The dashcam clearly shows Defendant grasping and shaking what would be a soft plastic baggie—not a weapon.

24. Despite physically touching the soft plastic baggie, Defendant later wrote in his report that he placed Plaintiff in handcuffs "due to not knowing if Alanis had any sort of weapons."

25. At 5:45, right before the arrest, Defendant ordered Plaintiff to "take that out." Plaintiff complied and began reaching for his back pocket as ordered. Defendant's report falsely claims: "Alanis was attempting to push what he had away from view" and "As Alanis made that movement to hide what he had in his pants, Trooper Pedroza placed Alanis in handcuffs." The dashcam proves Plaintiff was following Defendant's direct order, not hiding anything.

26. At 5:48, Defendant handcuffed Plaintiff without probable cause. After handcuffing, Plaintiff's hands remained positioned over the back left pocket for 25 seconds (5:53 to 6:18).

27. Only after the 25 seconds elapsed, with Plaintiff's hands directly over the back pocket area with the "bulge," did Defendant begin securing that area.

28. Defendant's conduct throughout the encounter—never calling backup, opening the door unannounced, ordering Plaintiff to empty his own pockets, and later transporting Plaintiff to jail in the front passenger seat—was incompatible with genuine weapon fears.

### D. The Pattern of Fabrication and Temporal Manipulation

29. Defendant's probable cause affidavit states he "noticed Alanis was hiding something with his left hand and pushing it behind the back pocket area." The affidavit does not specify whether this alleged conduct occurred before or after the search.

30. Defendant's investigative report splits his "left hand hiding" claim across two time periods. First, he alleges that while searching for his wallet, Plaintiff "kept moving his left hand behind him." Second, during the out-of-vehicle search, he claims "Alanis's left hand kept moving to his back left side." Item 23 in the report adds that "As Alanis made that movement to hide what he had in his pants."

31. At 32:40 in the patrol car, Defendant stated: "every time that you turned and I asked you, hey, let's check this side, you kept turning and one of your hands kept moving around." The phrases "turned," "check this side," and "kept turning" match the out-of-vehicle search phase beginning at 3:46.

32. Defendant makes no contemporaneous, pre-search mention of "hiding" at the time such movements allegedly occurred. All instances of "hiding" appear only post hoc, tied solely to alleged actions once the search had begun, as illustrated in the quote above.

33. Regarding Defendant's out-of-vehicle hiding claim, dashcam footage directly contradicts this allegation, showing Plaintiff's left hand either raised visibly away from his body or reaching into his pockets in compliance with Defendant's "take this out" command, with no evidence of any hiding movements.

34. This video-verified fabrication regarding the out-of-vehicle hiding claims, combined with: (a) the physical impossibility of hiding 14 reflective packages without detection (¶¶ 35-39), (b) Defendant's downward-angled bodycam preventing verification of in-car claims, (c) his fabricated weapon fears, and (d) his perjury about identification timing (see ¶ 40), establishes a pattern of reporting events that is contradicted by objective evidence.

**E. Facts Concerning Defendant's Claim of Concealment**

35. The only contraband discovered was already on Plaintiff's person: fourteen blister packages of pills and multiple loose pill baggies. Additional pills were later discovered in Plaintiff's shoes during booking. No contraband was located anywhere in the vehicle.

Continuation of III - Civil Action No. 7:25-cv-00393

36. Each blister package was approximately the size of a pack of Dentyne Ice gum and made of reflective metallic material that produces noise when handled; no such noise or handling was observed by Defendant or recorded on the bodycam.

37. While Plaintiff was searching for his wallet, Defendant did not ask questions indicating he observed packages or pill baggies being moved; instead he asked about a USB device and whether Plaintiff was sitting on anything.

38. Additional facts regarding the wallet-searching period: (a) his report confirms that the center console and glovebox were empty, without addressing the source of items later found on Plaintiff's person; (b) despite claiming to observe "hiding" movements, he never saw any of the 14 reflective packages later found on Plaintiff's person in plain view or anywhere in the car during the encounter; and (c) he failed to ask about or mention observing specific reflective packages or baggies during the alleged "hiding."

39. Throughout the entire pre-search period—including the wallet-searching phase when Defendant claims he observed "hiding" movements—his bodycam did not capture Plaintiff's upper body or hand movements.

## F.  Additional Evidence of Fabrication

40. Defendant falsely swore he "identified the driver" before conducting the search. Video evidence proves identification occurred only at 10:07, after Plaintiff was already handcuffed and in the patrol car.

41. Defendant claimed he "noticed a bulge in the back pocket area" as probable cause, but he only discovered this after physically palpating the pocket during his warrantless search at 5:20.

42. Defendant stated Plaintiff had "prescription medication without a prescription" despite finding prescribed Nardil medication in a CVS bag with visible prescription label and refusing

8

Continuation of III - Civil Action No. 7:25-cv-00393

Plaintiff's attempts to retrieve prescription documentation.

43. Toxicology showed only cannabinoids consistent with legal Delta-8 use. The vehicle search reveal no contraband. Pills found in Plaintiff's shoes during booking further demonstrate items were already on his person before the stop, contradicting any "hiding" during the encounter.

44. Defendant also claimed in his reports that Plaintiff hid what was already hidden, for example stating: "As Alanis made that movement to hide what he had in his pants."

## G. Disposition

45. All criminal charges against Plaintiff were dismissed on February 1, 2024.

## H. Pattern Evidence of Similar Conduct

46. Upon information and belief, Defendant's sophisticated fabrication techniques in this case reflect a broader pattern of constitutional violations.

47. Publicly available records reflect that from January 2022 through 2024, Defendant escalated 29 traffic stops into arrests, out of 71 total arrests. At least 10 of these traffic stop arrests involved drug or weapon charges—the same type of encounter presented in Plaintiff's case. These figures represent only a partial snapshot of Defendant's overall record, as additional years of data and the outcomes of pending cases remain unavailable

48. The following two tables detail Defendant's arrest record, revealing patterns relevant to this case:

Continuation of III - Civil Action No. 7:25-cv-00393

| All Arrest Violations | Count |
|---|---|
| DWI-Related Offenses (All Types) | 36 |
| Drug-Related Offenses | 19 |
| Smuggling/Human Trafficking | 5 |
| Weapon-Related Offenses | 1 |
| Other Criminal Violations | 10 |
| **Total** | **71** |

| Arrest Violations by Traffic Stop | Arrest Count |
|---|---|
| DWI Offenses (All Types) | 16 |
| **Poss Marij $<$ 2OZ** | **4** |
| **Poss CS PG 2 $<$ 1G** | **3** |
| **Poss CS PG 2 $\geq$ 4G $<$ 400G** | **2** |
| **UCW: Unl Carry Weapon** | **1** |
| **Drug and Weapon Related Arrests** | **10** |
| Other | 3 |
| **Total** | **29** |

49. The sophistication of Defendant's techniques—downward camera positioning, temporal manipulation, contradictory commands, and post-hoc justifications—supports an inference that they were not accidental but were instead practiced methods.

50. Defendant's immediate and confident execution of multiple deception techniques in coordinated fashion, without hesitation or uncertainty, makes it plausible that he has employed similar methods.

51. Plaintiff seeks discovery under Federal Rule of Evidence 404(b) of Defendant's prior traffic stops, arrests, bodycam footage, and complaints to establish: (a) intent to violate constitutional rights; (b) knowledge of how to evade constitutional scrutiny; (c) a common plan or

Continuation of III - Civil Action No. 7:25-cv-00393

scheme of fabricating evidence; and (d) absence of mistake in his false statements.

52. Such pattern evidence is directly relevant and admissible under Rule 404(b) when an officer's intent, knowledge, or absence of mistake is at issue, as it is here where Defendant claims qualified immunity.

## I. Resulting Harm

53. Plaintiff was incarcerated for eight days and forced to withdraw from prescribed MAOI medication (Nardil) without medical supervision, creating serious health risks.

54. Plaintiff suffered a panic attack requiring medical attention (captured on video), emotional distress, reputational harm, and was later diagnosed with Unspecified Trauma and Stressor-Related Disorder as a direct result of this incident.

## VI. LIMITATIONS, ACCRUAL, AND TOLLING

55. Texas' two-year limitations period applies to Plaintiff's § 1983 claims. See *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (borrowing TEX. CIV. PRAC. & REM. CODE § 16.003(a)). Plaintiff's Original Complaint was received by the Clerk on July 2, 2025, and this First Amended Complaint relates back under Fed. R. Civ. P. 15(c).

56. Accrual is governed by federal law. Plaintiff's unlawful stop/search/false-arrest claims accrued when the detention and arrest occurred on January 20, 2023. See *Wallace v. Kato*, 549 U.S. 384, 389 (2007). Plaintiff's Fourth Amendment malicious-prosecution claim accrued upon favorable termination on February 1, 2024. See *Thompson v. Clark*, 596 U.S. 36, 44 (2022).

57. The malicious-prosecution claim is timely without tolling (filed within two years of February 1, 2024). As to claims that accrued January 20, 2023, limitations is tolled by fraudulent concealment and, in the alternative, by the discovery rule and equitable tolling as pleaded

11

Continuation of III - Civil Action No. 7:25-cv-00393

below. Plaintiff discovered the concealed constitutional violations on June 20, 2025, and filed suit 12 days later.

58. **Fallback timeliness argument.** Even if the Court were to hold that limitations began to run only once Plaintiff's criminal defense counsel filed a discovery motion on September 25, 2023—the earliest point at which Plaintiff or his representatives could lawfully obtain the digital dashcam/bodycam evidence from the State while the case was pending—Plaintiff's July 2, 2025 filing remains well within the two-year limitations period (expiring September 25, 2025). Thus, under even the most restrictive view, Plaintiff's claims are timely.

## VII. TOLLING OF LIMITATIONS

### A. Fraudulent Concealment (Affirmative Acts, Successful Concealment, and Diligence)

59. Plaintiff pleads fraudulent concealment under Texas law as borrowed in § 1983 actions litigated in the Fifth Circuit. To toll limitations, Plaintiff alleges (1) affirmative acts of concealment that are distinct from the underlying constitutional violations; (2) successful concealment that actually prevented discovery of the cause of action; and (3) Plaintiff's reasonable diligence. See, e.g., *State of Tex. v. Allan Constr. Co.*, 851 F.2d 1526, 1528–29 (5th Cir. 1988).

60. **Affirmative acts distinct from the underlying seizure/search.** Beyond the fabrication itself, Defendant undertook specific steps designed to prevent discovery that satisfy the "trick or contrivance" standard under *State of Tex. v. Allan Constr. Co.*, 851 F.2d 1526, 1529 (5th Cir. 1988):

   - **Pre-angled body camera**: Before initiating contact, Defendant angled his bodycam downward at his khakis, creating an unverifiable record of the critical period when he claims "hiding" occurred. This deliberate act is proven by: (a) camera already pointing down when recording began; (b) his later demonstration of full camera control at 33:00;

Continuation of III - Civil Action No. 7:25-cv-00393

and (c) knowledge of exact camera field for evidence documentation. This manipulation exploited the precise legal gap between what appears legitimate to laypersons and what violates Terry v. Ohio.

- **Temporal deception exceeding the violation itself** Defendant's affidavit deliberately misplaced his "hiding with left hand" claim to suggest it occurred during the initial wallet search (unverifiable due to camera angle), when his 32:40 admission reveals it actually referred to the out-of-vehicle phase where dashcam proves no hiding occurred. This temporal manipulation constitutes affirmative concealment separate from the false statement itself.

- **Weaponizing legal complexity:** Defendant specifically invoked "weapon fear"—knowing this precise justification is required under *Terry* for vehicle removal—while physically palpating what he knew was a soft baggie at 5:20. Without legal training in Terry doctrine, a reasonable person could not recognize this deliberate exploitation of legal standards.

- **Active suppression during the encounter:** during the stop: When Plaintiff moved to retrieve prescriptions at 4:46, Defendant commanded "no no no, stay over here," preventing documentation that would have undermined his probable cause narrative. This affirmative act of concealment violated *Brady* duties and ensured no contemporaneous exculpatory evidence existed..

61. **Successful concealment that prevented discovery.** The foregoing steps concealed the true basis (and timing) of Defendant's claimed observations, making the encounter appear facially compliant to a layperson and even to counsel who lacked synchronized video review. Although defense counsel filed a discovery motion on September 25, 2023, and later received materials, Plaintiff—incarcerated and without personal access to the digital evidence—did not receive unrestricted access to the synchronized dashcam/bodycam files until June 20, 2025. Only then could he conduct frame-by-frame analysis aligning the 32:40

13

admission with the out-of-vehicle footage and expose the temporal manipulation and fabricated "weapon fear."

62. **Meeting the Fifth Circuit's strict standard for concealment.** These acts transcend mere silence or non-disclosure. Under *State of Tex. v. Allan Constr. Co.*, 851 F.2d 1526, 1529 (5th Cir. 1988), fraudulent concealment requires "a trick or contrivance intended to exclude suspicion and prevent inquiry." Defendant's multi-layered concealment scheme—manipulating recording equipment before the encounter, falsifying temporal sequences in sworn documents, and actively preventing exculpatory documentation—demonstrates the trick or contrivance required to toll limitations. Even trained legal professionals reviewing this case could not detect these violations without both synchronized video analysis and specific knowledge of *Terry's* weapon-fear requirement, proving the concealment's sophistication.

63. **Reasonable diligence.** Plaintiff acted with diligence under the objective standard. Key steps include: (a) January 20–28, 2023 incarceration immediately following arrest; (b) August 2023–January 2024 incarceration on an unrelated matter without access to the digital files; (c) favorable termination on February 1, 2024; (d) upon obtaining his complete case materials from former counsel in connection with an unrelated matter on June 20, 2025, Plaintiff conducted a detailed, frame-by-frame analysis of the synchronized video evidence. It was only through this intensive review that Plaintiff first discovered the concealed nature of his constitutional claims, specifically by aligning Defendant's reports and affidavit with the exculpatory synchronization of bodycam and dashcam footage; and (e) he filed suit 12 days later, on July 2, 2025. Under these facts, Plaintiff exercised reasonable diligence and the concealment remained effective until June 20, 2025.

64. **Tolling period.** Fraudulent concealment tolled limitations on the January 20, 2023 claims until June 20, 2025, when Plaintiff, despite diligence, first could and did discover the concealed fabrication through synchronized video analysis and Defendant's own admission.

14

Continuation of III - Civil Action No. 7:25-cv-00393

**B. Discovery Rule (Inherently Undiscoverable Injury; Objectively Verifiable)**

65. In the alternative, the discovery rule defers accrual/tolls limitations because the injury was inherently undiscoverable to a layperson despite reasonable diligence and is objectively verifiable by synchronized video and sworn statements. See *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987). Critical constitutional violations were concealed through temporal manipulations that only legal knowledge could expose:

- **Rodriguez violation through false identification timing:** Defendant's affidavit claims he "identified the driver" before conducting searches, but video proves identification occurred only at 10:07 after arrest. A layperson would not know this temporal sequence violates *Rodriguez v. United States*, 575 U.S. 348 (2015), by extending the stop beyond its mission without reasonable suspicion. Only someone understanding Rodriguez's holding that stops cannot be prolonged for investigative purposes would recognize this as a constitutional violation.

- **Terry violation through weapon-fear fabrication:** Defendant claimed weapon fears justified the search, but video at 5:20 shows him physically palpating what he knew was a soft plastic baggie. Without knowledge that *Terry v. Ohio* requires reasonable belief of weapon presence for protective searches, a layperson could not identify this as proving the search unlawful.

- **Probable cause manipulation through temporal deception:** The 32:40 admission revealing Defendant's "hiding" claim actually referred to the out-of-vehicle phase (where dashcam proves compliance) required aligning audio with frame-by-frame video analysis between 3:46-5:48—a technical process that also required understanding how temporal placement of observations affects probable cause determination under Fourth Amendment law.

66. These violations were inherently undiscoverable because detecting them required both technical capabilities (synchronized video analysis) and specialized legal knowledge (Rodriguez

15

mission-creep doctrine, Terry weapon-fear requirements, Fourth Amendment probable cause standards) that reasonable laypersons lack.

## C. Equitable Tolling (Federal Standard; Diligence + Extraordinary Circumstance)

67. In the alternative, equitable tolling applies under the stringent two-part federal test because:

(a) **Diligent pursuit:** Plaintiff pursued his rights with "diligence and alacrity" by immediately investigating upon learning the relevant legal standard (June 2025), obtaining his case file within weeks, conducting frame-by-frame analysis, and filing suit 12 days after discovery. See *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255-57 (2016).

(b) **Extraordinary circumstances:** This case presents the "rare and exceptional circumstances" required under Fifth Circuit precedent. Defendant actively misled Plaintiff about the cause of action through: (1) deliberate bodycam positioning that made verification impossible; (2) temporal manipulation in sworn documents that concealed when alleged observations occurred; (3) exploitation of the specific legal knowledge gap regarding Terry's weapon-fear requirement; and (4) active prevention of exculpatory documentation. These circumstances go beyond typical police misconduct or report falsification—they constitute a calculated scheme to exploit the precise boundary between apparent legitimacy and constitutional violation. The combination of Defendant's affirmative concealment with Plaintiff's lack of access to synchronized digital evidence while incarcerated (January and August 2023-January 2024) created an extraordinary barrier that no amount of diligence could overcome without the specific legal knowledge Plaintiff later acquired.

68. **Distinguished from attorney negligence.** The Fifth Circuit holds that attorney error, even if egregious, does not constitute extraordinary circumstances for tolling. See *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002). Here, however, the barrier was not counsel's performance but Defendant's concealment being so sophisticated that it deceived even trained legal professionals. The fact that defense counsel, with full discovery access, did not identify these violations demonstrates not attorney negligence but the extraordinary effectiveness of

Continuation of III - Civil Action No. 7:25-cv-00393

Defendant's concealment scheme—which required the unusual combination of synchronized video analysis AND specific knowledge of Terry doctrine to expose.

## D. Pleading Specificity and Rule 12 Posture

69. The foregoing allegations provide the who/what/when/where/how of the concealment, discovery trigger, diligence, and fallback September 25, 2023 timeliness argument. Because fraudulent concealment, discovery rule, and equitable tolling are fact-intensive, dismissal at the pleadings stage is inappropriate; Plaintiff is entitled to discovery on these tolling issues. See *Twombly/Iqbal*; cf. *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (detailing material falsehoods/omissions in warrant context).

## VIII. FIRST CLAIM: FOURTH AMENDMENT VIOLATIONS

70. Plaintiff incorporates paragraphs 1-54.

71. The Fourth Amendment prohibits unreasonable searches and seizures. These rights were clearly established before January 2023.

## A. Unlawful Extension of Traffic Stop

72. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015), clearly established that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."

73. The stop's mission was completed at 2:48 when Plaintiff produced his license. Any detention beyond this point required independent reasonable suspicion.

74. Defendant extended the stop at 3:02 by opening the vehicle door without reasonable suspicion. His relaxed demeanor for the preceding minute, unannounced door opening and commanding Plaintiff to empty his own pockets demonstrate no legitimate safety concerns existed.

17

Continuation of III - Civil Action No. 7:25-cv-00393

75. Observing legal Delta-8 products provided no justification for continued detention.

76. No reasonable officer could believe extending a completed stop without reasonable suspicion was lawful under clearly established law. See *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004).

## B. Unlawful Warrantless Searches

77. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment" *Katz v. United States*, 389 U.S. 347, 357 (1967).

78. Defendant conducted multiple warrantless searches without probable cause, consent, or valid exception: (a) opening the driver's door at 3:02; (b) searching Plaintiff's pockets from 3:56 forward; (c) physically palpating Plaintiff's back pocket at 5:20; and (d) searching intimate areas after arrest.

79. No exception to the warrant requirement applied: (a) Plaintiff did not consent to any search; (b) no exigent circumstances existed as Defendant exhibited no urgency and never called for backup; (c) the plain view doctrine did not apply as only legal Delta-8 products were visible; (d) no valid Terry frisk was justified as Defendant's claimed "weapon fear" was objectively unreasonable after he palpated a soft baggie; and (e) search incident to arrest cannot justify the searches that preceded and led to the arrest itself.

80. No reasonable officer could believe these searches were lawful under clearly established Fourth Amendment law.

## C. False Arrest Without Probable Cause

81. *Dunaway v. New York*, 442 U.S. 200 (1979), clearly established that arrests without probable cause violate the Fourth Amendment.

18

Continuation of III - Civil Action No. 7:25-cv-00393

82. No probable cause existed at the time of Plaintiff's detention or cuffing because: (a) Defendant's stated concern about weapons was objectively unreasonable, as he palpated a soft baggie that could not contain a weapon; (b) Plaintiff had not hidden anything while searching for his wallet, and the downward-angled bodycam could not capture the alleged hiding movements; (c) the dashcam footage shows no hiding occurred during the out-of-vehicle encounter; and (d) any post-search observation of items, including prescription medications, cannot retroactively establish probable cause, as the search itself was unlawful.

83. Fabricated evidence can never establish probable cause. See *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Here, Defendant's manufactured 'hiding' narrative was the only purported basis for probable cause. Because this narrative was fabricated, no probable cause existed as a matter of law.

84. Under *Franks v. Delaware*, 438 U.S. 154 (1978), and *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018), arrests based on fabricated evidence violate the Fourth Amendment when material misrepresentations were made knowingly or recklessly.

85. Dashcam proves he fabricated at least the out-of-vehicle "hiding" claims, demonstrating his willingness to manufacture evidence. Combined with the deliberate temporal ambiguity in his affidavit and multiple other proven falsehoods, no reasonable officer could believe probable cause existed.

86. Significantly, the physical impossibility of Defendant's claims further proves their fabrication. No reasonable officer observing 14 large, reflective metallic packages being actively "hidden" would fail to mention their specific appearance or ask about them directly.

87. No reasonable officer could believe probable cause existed based on legal products and demonstrably false claims.

## D. Pattern Evidence Supporting Knowledge and Intent

88. Defendant's arrest statistics reflect repeated escalation of traffic stops into drug-related arrests. Plaintiff alleges that this experience is relevant to whether Defendant's statements in this case were deliberate rather than mistaken.

89. His 29 traffic stop arrests, including 10 for drugs or weapons, provided ample opportunity to develop and refine the sophisticated concealment techniques employed against Plaintiff

90. Defendant's record of escalating routine traffic stops into drug arrests shows he was not mistaken here; he deliberately deployed the same practiced techniques. Pattern evidence makes his fabrication in this case more than plausible—it is the natural extension of his established methods.

91. The practiced execution of multiple coordinated deception techniques—camera manipulation, temporal distortion, contradictory commands, post-hoc audio creation—demonstrates intent and knowledge, not accident.

92. Defendant's statement that he could "lose [his] job" for violating rights proves he knew his conduct was unlawful yet proceeded anyway.

## E. Qualified Immunity Is Inapplicable

93. No reasonable officer could believe that extending a completed traffic stop without reasonable suspicion, conducting warrantless searches without probable cause or valid exceptions, or arresting someone based on fabricated evidence was lawful. *Rodriguez* clearly established in 2015 that extending stops without reasonable suspicion violates the Fourth Amendment. Every reasonable officer knows that fabricating evidence to manufacture probable cause violates clearly established constitutional rights.

94. Because Defendant's conduct involved fabrication, which by definition falls outside the scope of reasonable officer judgment, qualified immunity does not apply. No case law is

Continuation of III - Civil Action No. 7:25-cv-00393

required to tell an officer that lying is unlawful

95. Defendant's own acknowledgment that violating rights could cost him his job defeats any qualified immunity claim, as it proves he knew his conduct violated clearly established law.

## IX.  SECOND CLAIM: FOURTEENTH AMENDMENT DUE PROCESS

96. Plaintiff incorporates paragraphs 1-54.

97. The Fourteenth Amendment prohibits deprivation of liberty through fabricated evidence. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

### A.  Fabrication of Evidence

98. The Fifth Circuit in *Green v. Thomas, No. 24-60314 (5th Cir. 2025)*, reaffirmed that officers violate clearly established due process rights by intentionally or recklessly relying on fabricated or unreliable evidence to establish probable cause.

99. Defendant knowingly fabricated:

- False "hiding" claims contradicted by dashcam footage

- False "weapon fear" after physically confirming a soft baggie

- False temporal sequence placing "hiding" before the search

- False claim of no prescription when prescribed Nardil was found

- Physically impossible narrative of hiding 14 large reflective packages

100. These fabrications were deliberate, as proven by: (a) video evidence showing what actually occurred; (b) Defendant's camera manipulation; (c) internal inconsistencies in his reports; (d) inconsistencies between the video evidence and his reports and affidavit (e) the physical impossibility of hiding 14 metallic packages without detection; (f) his 32:40 statement revealing the source of his 'left hand' hiding narrative.

101. Fabricated evidence can never establish probable cause. See *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Here, Defendant's manufactured 'hiding' narrative was the only purported basis for probable cause. Because this narrative was fabricated, no probable cause existed as a matter of law.

## B. Deprivation of Liberty

102. Defendant's fabrications directly caused: (a) Plaintiff's arrest; (b) 8 days incarceration; (c) forced medication withdrawal; and (d) year-long prosecution.

103. But for these fabrications, no arrest would have occurred as no probable cause existed.

104. This deprivation of liberty was independent of the initial unlawful arrest and occurred through the state's reliance on fabricated evidence in the prosecution itself.

105. Defendant's conduct was conscience-shocking, violating clearly established due process rights.

## C. Pattern Evidence of Deliberate Misconduct

106. Defendant's 71 arrests, including 29 traffic stops with 10 involving drugs or weapons, provide context for Plaintiff's allegations and support the plausibility that the techniques employed in this stop were deliberate rather than accidental.

107. Defendant's record of escalating routine traffic stops into drug arrests shows he was not mistaken here; he deliberately deployed the same practiced techniques. Pattern evidence makes his fabrication in this case more than plausible—it is the natural extension of his established methods.

## D. Qualified Immunity Is Inapplicable

108. No reasonable officer could believe that fabricating evidence to deprive someone of liberty was lawful. The right to be free from fabricated evidence has been clearly established for

Continuation of III - Civil Action No. 7:25-cv-00393

decades. Defendant's deliberate manipulation of evidence and false statements shock the conscience and violate clearly established due process rights.

109. Because Defendant's conduct involved fabrication, which by definition falls outside the scope of reasonable officer judgment, qualified immunity does not apply. No case law is required to tell an officer that lying is unlawful.

110. Defendant's acknowledgment that rights violations could terminate his employment defeats any immunity claim.

## X. THIRD CLAIM: MALICIOUS PROSECUTION

111. Plaintiff incorporates paragraphs 1-54.

112. *Thompson v. Clark*, 596 U.S. 36 (2022), establishes that Fourth Amendment malicious prosecution requires: (1) commencement of criminal proceedings; (2) lack of probable cause; (3) malice; and (4) favorable termination.

113. **Commencement:** Defendant initiated proceedings through his sworn affidavit and investigative report.

114. **Lack of Probable Cause:** As detailed above, no probable cause existed. The alleged "hiding" was fabricated and temporally manipulated. The physical impossibility of hiding 14 reflective packages proves fabrication.

115. **Malice:** Defendant acted with malice by: (a) knowingly fabricating the "hiding" narrative; (b) manipulating his bodycam; (c) preventing prescription verification; (d) creating post-hoc justifications; and (e) acknowledging he could lose his job for rights violations yet proceeding anyway.

116. **Favorable Termination:** All charges were dismissed February 1, 2024, satisfying *Thompson*'s requirement that prosecution ended without conviction.

Continuation of III - Civil Action No. 7:25-cv-00393

117. Under *Chiaverini v. City of Napoleon*, 602 U.S. (2024), probable cause for any valid charge does not defeat malicious prosecution claims for other baseless charges. Here, all charges lacked probable cause.

118. Plaintiff suffered 8 days incarceration, forced medication withdrawal, emotional distress, Unspecified Trauma and Stressor-Related Disorder (UTSRD) diagnosis, and reputational harm as direct results.

## A. Pattern Evidence of Malicious Intent

119. Defendant's extensive arrest record, particularly his 10 drug/weapon arrests from traffic stops, demonstrates he knew how to manipulate evidence to secure convictions.

120. His practiced execution of sophisticated fabrication techniques proves malicious intent rather than good faith error.

## B. Qualified Immunity Is Inapplicable

121. No reasonable officer could believe that initiating criminal prosecution based on fabricated evidence was lawful. The Supreme Court's recent decisions in *Thompson* and *Chiaverini* confirm that malicious prosecution violates clearly established Fourth Amendment rights when officers fabricate evidence to initiate baseless charges.

## XI. FOURTH CLAIM: FALSE IMPRISONMENT (TEXAS LAW)

122. Plaintiff incorporates paragraphs 1-54.

123. Under Texas law, false imprisonment occurs when one willfully detains another without legal justification and without consent. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).

124. Defendant willfully detained Plaintiff by handcuffing him at 5:48 and causing 8-day incarceration.

24

125. No legal justification existed: (a) no probable cause; (b) arrest based on fabricated evidence; (c) no hiding occurred; (d) no weapons found; and (e) physical impossibility of hiding 14 reflective packages.

126. Under Texas law, Defendant's deliberate fabrication of probable cause removes any privilege or justification for the detention. An arrest based on knowingly false information cannot be legally justified. See *Garza v. Harrison*, 574 S.W.3d 389 (Tex. 2019).

127. Defendant's admission that he could "lose [his] job" for violating rights proves he knew the detention was unlawful.

128. Plaintiff did not consent.

129. Plaintiff suffered damages including loss of liberty, emotional distress, and physical harm from forced medication withdrawal.

130. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

## XII.  REQUEST FOR RULE 404(b) DISCOVERY

131. Plaintiff seeks discovery of Defendant's prior traffic stops, arrests, bodycam footage, reports, and complaints to establish admissible evidence under Federal Rule of Evidence 404(b).

132. Such evidence is relevant to prove: (a) intent to violate constitutional rights; (b) knowledge of how to evade constitutional scrutiny; (c) a common plan or scheme of fabricating evidence; and (d) absence of mistake in false statements.

133. Defendant's 71 arrests include 29 stemming from traffic stops, 10 of which involved drugs or weapons, providing a substantial basis for believing pattern evidence exists.

134. The sophisticated, coordinated nature of Defendant's techniques—camera manipulation, temporal distortion, contradictory commands, post-hoc justifications—strongly suggests prior practice.

Continuation of III - Civil Action No. 7:25-cv-00393

135. Defendant's confidence in violating rights despite knowing it could "lose [his] job" indicates experience with avoiding consequences for similar conduct.

136. This discovery is necessary to rebut any qualified immunity defense by proving Defendant's deliberate intent and knowledge.

137. Plaintiff is willing to accept reasonable protective measures including redaction of personal information and limitations to similar types of stops.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

**Angel Adalberto Alanis**,
    Plaintiff,

v.

**Trooper Pedroza**,
    Defendant.

Civil Action No. 7:25-cv-00393

### Continuation of Section IV – Injuries

138. As a direct and proximate result of Defendant's constitutional violations, Plaintiff suffered the following injuries and damages:

- 8 days of unlawful incarceration;
- Forced withdrawal from prescribed MAOI medication;
- Physical pain and suffering from medication withdrawal;
- Mental anguish and emotional distress;
- Humiliation and embarrassment;
- Loss of liberty;
- Loss of use and eventual loss of Plaintiff's vehicle;
- Lost employment opportunities;
- Bond paid for release;
- Legal fees and costs as a result of the arrest and prosecution;
- Diagnosed with unspecified trauma and stressor related disorder;
- Ongoing medical evaluations and potential neurocognitive, physiological, or psychological impairments;
- Costs for mental health treatment, counseling, and/or therapy;
- Loss of enjoyment of life and disruption of daily activities;
- Any and all other damages, injuries, or losses revealed through discovery, further evaluation, or proven at trial.

139. Plaintiff expressly reserves the right to supplement or amend this section as further medical, psychological, or financial injuries are discovered.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

**Angel Adalberto Alanis**,
    Plaintiff,

v.

**Trooper Pedroza**,
    Defendant.


Civil Action No. 7:25-cv-00393


### Continuation of Section V – Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

140. Enter judgment in favor of Plaintiff and against Defendant Pedroza on all claims;

141. Award compensatory damages in an amount exceeding $75,000, including but not limited to:

- Wrongful incarceration, including 8 days of unlawful detention;

- Forced medication withdrawal and resulting health risks;

- Emotional distress, panic attacks requiring medical attention, pain and suffering, and loss of enjoyment of life;

- Diagnosis and treatment of Unspecified Trauma and Stressor-Related Disorder;

- Reputational harm from false arrest and prosecution;

- Financial losses, including bond, loss of vehicle, legal fees for criminal defense, and lost employment opportunities;

- Mental health treatment costs;

- Any other out-of-pocket costs or expenses resulting from the wrongful arrest;

- Any additional damages revealed through discovery, further medical evaluation, or proven at trial.

142. Award punitive damages against Defendant Pedroza sufficient to punish deliberate misconduct and deter future constitutional violations;

143. Declare that Defendant violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments;

144. Award reasonable attorney's fees and costs under 42 U.S.C. § 1988, including for any counsel involved and costs incurred by Plaintiff as a pro se litigant;

145. Order the preservation and production of all relevant bodycam, dashcam, communications, and other evidence related to the incident;

146. Enter an order holding that Plaintiff's claims are timely because the statute of limitations is tolled by fraudulent concealment and, alternatively, by the discovery rule and equitable tolling, or, at minimum, deny any Rule 12(b)(6) motion on limitations grounds pending factual development;

147. Grant discovery under Rule 404(b) of Defendant's prior traffic stops, arrests, bodycam footage, reports, and complaints to establish pattern, intent, knowledge, plan, and absence of mistake;

148. Award prejudgment and postjudgment interest at the maximum rate allowed by law;

149. Grant a jury trial on all issues so triable;

150. Grant such other and further relief as the Court deems just and proper.