United States District Court
Southern District of Texas
FILED

APR 0 3 2026

Nathan Ochsner, Clerk

Civil Action No. 7:25-cv-00393

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

McALLEN DIVISION

ANGEL ADALBERTO ALANIS,

     Plaintiff,

                                    Civil Action No. 7:25-cv-00393

v.

PABLO PEDROZA, et al.,

     Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO PROSECUTOR DEFENDANTS' MOTION TO DISMISS

Plaintiff Angel Adalberto Alanis, proceeding pro se, respectfully opposes the Motion to Dismiss filed by Defendant Hidalgo County District Attorney Toribio "Terry" Palacios (ECF 52) and would show the Court the following:

### I. INTRODUCTION

Prosecutor Defendants ask this Court to dismiss Plaintiff's claims on three grounds: (1) Eleventh Amendment sovereign immunity; (2) that Defendant Palacios is not a "person" under 42 U.S.C. § 1983; and (3) absolute prosecutorial immunity. Each argument rests on the same foundational error: the mischaracterization of Plaintiff's claims as challenges to individual prosecutorial charging decisions. They are not.

Plaintiff's Seventh Claim (Monell municipal liability, official capacity) challenges five specific *administrative customs* maintained by the Hidalgo County District Attorney's Office over eight years: (1) filing charges without reviewing available video evidence; (2) maintaining no offi-

1

cer credibility tracking system; (3) conducting no cross-case pattern analysis; (4) implementing no substance verification protocol; and (5) mechanically incorporating police reports without independent verification. ECF 45 at 138. These are office management and intake screening functions—the administrative infrastructure through which the office processes cases—not individual prosecutorial decisions "inextricably tied" to the exercise of state prosecutorial power.

Plaintiff's Eighth Claim (individual capacity against John Doe) challenges the failure to perform a ministerial investigatory task: verifying whether loperamide—over-the-counter Imodium—appears in the Texas Penalty Groups before filing a criminal charge alleging it is a controlled substance. ECF 45 at 244–252. That is not advocacy. It is a failure to determine whether a crime existed.

The distinction matters because the Fifth Circuit applies a *function-specific* inquiry to determine whether a district attorney acts for the state or the county. *Daves v. Dallas County*, 22 F.4th 522, 533 (5th Cir. 2022). When the function is administrative—intake procedures, training, supervision, evidence verification protocols—the DA acts as a county policymaker subject to § 1983. Prosecutor Defendants' motion never engages with this distinction. It should be denied.

## II. STANDARD OF REVIEW

On a motion to dismiss under Rules 12(b)(1) and 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court may not credit Defendants' alternative factual narratives, weigh evidence, or resolve factual disputes. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint survives if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Critically, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Dismissal under Rule 12(b)(6) is disfavored, and "the question is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey v. Tex. A & M*

2

*Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

## III. TEXAS DISTRICT ATTORNEYS ARE COUNTY OFFICIALS NOT ENTITLED TO SOVEREIGN IMMUNITY

### A. Forty Years of Binding Precedent Foreclose Prosecutor Defendants' Sovereign Immunity and Personhood Arguments

Prosecutor Defendants ask this Court to dismiss Plaintiff's claims on two threshold grounds: (1) that Defendant Palacios is shielded by Eleventh Amendment sovereign immunity; and (2) that he is not a "person" under § 1983. Mot. at 6–10. Both arguments are foreclosed by binding Fifth Circuit precedent stretching back forty years.

In *Crane v. Texas*, the Fifth Circuit held—in both the original panel opinion and on rehearing—that Texas district attorneys are not protected by Eleventh Amendment immunity and are "persons" within the meaning of 42 U.S.C. § 1983. 759 F.2d 412 (5th Cir. 1985), rehearing denied, 766 F.2d 193 (5th Cir. 1985). On rehearing, the court acknowledged that a Texas DA "has numerous, if relatively minor, attributes of a State official," but concluded that "[o]ther and more significant factors" pointed the other direction: he is "elected by the voters of his district," his powers are "limited to the territory of his district," he "exercises [them] alone and without re-sponsibility to the State Attorney General," and he "is paid by county funds." 766 F.2d at 194–95. The court further noted that "the significance of the creation of his office by the State Constitution is diminished by the circumstance that other local offices are created by it as well." *Id.* at 195. The court's conclusion was unequivocal: "[W]e conclude that he is properly viewed as a county official, elected by its voters and responsible for its relevant policy. In such circumstances, we see no injustice in holding the County responsible for his actions of this sort." *Id.*

In its original panel opinion, the court held that this conclusion "necessarily disposes of Dallas County's contention that it is not a 'person' within the meaning of 42 U.S.C. Sec. 1983; under *Monell* ... a unit of local government not protected by the Eleventh Amendment is such a person." 759 F.2d at 412, ¶ 28.

In *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999), the Fifth Circuit confirmed and clarified the rule. Applying the six-factor *Clark* analysis, the court held that the Orleans Parish DA's Office was not an arm of the state. *Id.* at 683. Critically, the court distinguished the Eleventh Amendment analysis from the § 1983 policymaker inquiry: "While we look at the function of the officer being sued in the [§ 1983] context, we do not in our Eleventh Amendment analysis." *Id.* at 681 n.1 (citing *Esteves v. Brock*, 106 F.3d 674, 677–78 (5th Cir. 1997)). This distinction is fatal to Prosecutor Defendants' approach, which conflates the two frameworks throughout their brief.

*Hudson*'s comparison of Texas and Louisiana DAs further strengthens Plaintiff's position. The court observed that Texas DAs lack sovereign immunity because the office is county-funded, the state AG has no supervisory power over prosecutorial decisions, and the DA is elected by and limited to a single county. *Id.* at 682 (discussing *Crane*, 766 F.2d at 194–95). By contrast, Louisiana DAs possess *more* state-level attributes—including constitutional placement within the state judicial branch and a mechanism for Attorney General oversight—yet the Fifth Circuit *still* denied them Eleventh Amendment protection. *Id.* at 683. If Louisiana DAs are not immune, Texas DAs are *a fortiori* not immune.

In *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999), the Fifth Circuit reaffirmed: "The rule in this circuit is that a ... district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity." *Id.* at 466.

Most recently, in *National Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024), the Fifth Circuit stated in a published opinion that it has "held that Texas district attorneys [are] not protected by the Eleventh Amendment precisely because they are county officials, not state officials." *Id.* at 787 (quoting *Hudson*, 174 F.3d at 682). The court described this as a "categorical approach." *Id.*

This is settled law. It disposes of both Prosecutor Defendants' sovereign immunity argument (Mot. at 6–9) and their "not a person" argument (Mot. at 10) in a single stroke. Defendant Palacios is a county official. His office is a "person" under § 1983. The motion should be denied on these grounds alone.

4

## B. Prosecutor Defendants' Cited Authorities Are Inapposite

Prosecutor Defendants cite *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024), and *Quiroz v. Hernandez*, 167 F.4th 254 (5th Cir. 2025), for the proposition that Texas DAs enjoy sovereign immunity. Mot. at 6. Neither case holds what Prosecutor Defendants claim.

*Mi Familia Vota* did not hold that Texas district attorneys are state officials. The court found that the Harris County DA lacked a sufficient *connection to the enforcement* of the specific election code provisions being challenged and therefore the *Ex parte Young* exception did not apply. 105 F.4th at 326–29. That is an enforcement-connection problem specific to the challenged statute— not a holding about DA status. This case is categorically different. Plaintiff does not ask Palacios to stop enforcing a statute he has no connection to. Plaintiff challenges the *administrative customs of Palacios's own office* in processing the very cases his office prosecuted over eight years. The enforcement-connection problem in *Mi Familia Vota* simply does not arise.

Prosecutor Defendants also cite *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997), but *Hudson* explicitly distinguished *Esteves* as "dealing with county liability in the § 1983 context"—a different inquiry from the Eleventh Amendment analysis. 174 F.3d at 681 n.1. Indeed, as the Fifth Circuit noted in *Arnone v. County of Dallas*, the § 1983 policymaker "inquiry is distinct from what we use to decide whether an official is a state actor for Eleventh Amendment purposes." 29 F.4th 262, 267 (5th Cir. 2022). Prosecutor Defendants' brief conflates these two distinct frameworks, and their own cited authorities confirm the error.

## C. Plaintiff's Injunctive Relief Claims Independently Satisfy Ex Parte Young

Even if this Court were to depart from the categorical rule of *Crane* and *NPPA v. McCraw*—which would require overruling binding panel precedent—Plaintiff's claims for prospective injunctive relief independently satisfy *Ex parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment does not bar "relief that serves directly to bring an end to a present violation of federal law." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

Plaintiff seeks prospective reforms requiring Defendant Palacios to implement mandatory

5

verification procedures, training programs, officer credibility tracking, and accountability measures. ECF 45, Prayer for Relief. These customs are ongoing. After Plaintiff's case was dismissed in February 2024, the office continued prosecuting Pedroza cases under the same customs. The Southerland case was prosecuted in November 2023 under an identical pattern and dismissed in **February 2025** with explicit judicial findings of "Lack of probable cause for the arrest. Lack of reasonable suspicion." ECF 45 at 239.

Prosecutor Defendants' reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is misplaced. In *Lyons*, the plaintiff could not show a realistic threat of future injury from a police chokehold. Here, the customs operate systemically, their continuation is documented through the Southerland dismissal, and Plaintiff seeks structural reforms to institutional practices—not individualized injunctive relief against future encounters.

## IV. DA OFFICES ARE SUBJECT TO MONELL LIABILITY FOR ADMINISTRATIVE POLICY FAILURES

### A. Binding Precedent Establishes That DA Offices Are Local Government Entities Subject to Monell

Having established that Defendant Palacios is a county official and a "person" under § 1983, the question becomes whether Plaintiff has stated a viable *Monell* claim against him in his official capacity. The Fifth Circuit has squarely answered this threshold question: DA offices are amenable to *Monell* suit.

In *Burge v. Parish of St. Tammany*, the Fifth Circuit held that "[f]or purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." 187 F.3d at 470. The court then applied standard *Monell* municipal liability principles to the DA's official-capacity claims. The factual posture of *Burge* closely parallels this case: the plaintiff challenged the DA's "failure to establish adequate policies, procedures or regulations to ensure adequate training and supervision of employees." *Id.* at 466. The Fifth Circuit reversed the district court's dismissal on absolute immunity grounds and proceeded to evaluate the claim under

6

the deliberate indifference framework of *City of Canton v. Harris*, 489 U.S. 378 (1989). *Id.* at 466–75. The court ultimately affirmed summary judgment for the DA on the merits—not on jurisdictional grounds—because the plaintiff could not demonstrate sufficient evidence of deliberate indifference. *Id.* at 473–75.

The Supreme Court's analysis in *Connick v. Thompson*, 563 U.S. 51 (2011), further confirms this framework. In *Connick*, the Court addressed a § 1983 *Monell* claim alleging that the Orleans Parish DA's office was liable for failing to train prosecutors on *Brady* obligations. The Court reached the merits of the deliberate indifference analysis without ever suggesting that the Eleventh Amendment barred the claim or that the DA was not a "person" under § 1983. *Id.* at 61–71. Had DA office management customs been shielded as state-level functions, the Supreme Court would have dismissed on jurisdictional grounds rather than conducting an extensive deliberate indifference analysis.

Prosecutor Defendants' motion never addresses this line of authority. They offer no argument that the customs themselves fail to state a claim under *Monell*—only that the Court lacks jurisdiction to consider them. If the Court rejects the sovereign immunity and personhood arguments—as *Crane*, *Hudson*, *Burge*, and *NPPA v. McCraw* require—Plaintiff's *Monell* claim stands unchallenged on the merits at this stage.

## B. The Challenged Customs Are Administrative, Not Prosecutorial, and Therefore County-Level

Even under the function-specific analysis governing the § 1983 policymaker inquiry, Plaintiff prevails. The Fifth Circuit requires courts to "identify the level of government for which an official was acting when establishing the policy that is relevant to the claims." *Daves v. Dallas County*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc).

Prosecutor Defendants cite *Arnone v. County of Dallas*, 29 F.4th 262, 269–70 (5th Cir. 2022), in which the Fifth Circuit held that the Dallas County DA was a state policymaker when establishing a policy governing *when to seek revocation of probation*. The court's reasoning turned

on the fact that the policy was "inextricably linked with his power to seek [revocation] in individual cases." *Id.* at 270.

*Arnone*'s logic compels the opposite result here. The customs Plaintiff challenges are not "inextricably linked" with the DA's power to prosecute in individual cases. A substance verification protocol does not constrain or govern when the DA exercises prosecutorial discretion—it ensures the DA has accurate facts before making any charging decision. An officer credibility tracking spreadsheet does not tell the DA when to prosecute—it provides information. A video review procedure does not limit prosecutorial power—it ensures evidence is examined. Cross-case pattern analysis does not direct individual charging decisions—it detects systemic problems. These customs are the informational infrastructure that *precedes* any exercise of prosecutorial judgment. They do not touch the DA's discretion to prosecute or decline to prosecute any individual case.

This distinction is precisely what *Crane* recognized. In *Crane*, the DA had "established policies and procedures of an administrative nature only as to the filing and processing of criminal information in Dallas County." 759 F.2d at 412, ¶ 81 (quoting DA's own admission). The Fifth Circuit held that those administrative procedures constituted county policy for which the county was liable. *Id.* at ¶ 83 ("The County in this case acted through the District Attorney; he selected the means by which the County was to achieve a sound and legally sufficient [system]. His choice of an unsound and legally insufficient system represents County policy for which the County is liable."). The same reasoning applies here: Defendant Palacios selected the means—or more precisely, the *absence* of means—by which the Hidalgo County DA's Office would screen incoming cases. That choice constitutes county policy.

No state statute directs how a local DA's office must organize its intake screening, design its filing systems, train its line prosecutors, or track officer credibility. Under Texas law, the county funds the DA's office operations, including salaries, facilities, and equipment. Tex. Local Gov't Code § 157.901; Tex. Gov't Code Ch. 41. Assistant district attorneys and support staff are county employees. The county provides the office space, computers, and technological infrastructure through which the office manages cases. When Defendant Palacios chose not to implement

basic administrative safeguards, he made managerial decisions for the county—not prosecutorial decisions for the state.

## C. Plaintiff Satisfies Both Independent Monell Theories

Plaintiff's well-pleaded facts sustain the Monell claim under either of two independently sufficient theories of municipal liability.

### 1. Custom or Practice

Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a municipality is liable when "an official custom or practice" is the "moving force" behind a constitutional deprivation. A custom need not be formally adopted; it need only be "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Proof of a pattern of similar violations is the "ordinary" means of establishing a custom. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff has alleged a pattern of extraordinary breadth and specificity. The evidence operates at three levels:

*First*, the Pedroza pattern: twenty-three cases over eight years containing verbatim identical scripted language across unrelated suspects, prosecuted despite suppression motions, dismissals, the office's own declinations, and a judicial finding of "Lack of probable cause for the arrest. Lack of reasonable suspicion." ECF 45 at 117–118, 138–139.

*Second*, the cross-agency pattern: within a nineteen-day window in August–September 2023, the office rubber-stamped two facially deficient cases against Plaintiff from two separate law enforcement agencies—DPS and McAllen PD—each independently lacking adequate evidentiary support, each reflecting the same customs, and neither caught by any safeguard. ECF 45 at 153.

*Third*, the loperamide charge itself: the office filed and maintained for over five months a criminal charge alleging possession of a "controlled substance" that is not a controlled substance— over-the-counter Imodium—despite possessing a laboratory report identifying the substance. ECF

9

45 at 146–147, 159. This was a binary, verifiable error: loperamide does not appear in any Texas Penalty Group. It would have been caught by any substance verification protocol. The office had none. ECF 45 at 155.

That these three levels of failure—a pattern spanning eight years and twenty-five cases, cross-agency rubber-stamping within nineteen days, and a facially void charge maintained for months—all converged on a single plaintiff is itself powerful evidence that the customs are so persistent and widespread as to constitute official policy. Each deficiency would have been caught by the basic safeguards the office never implemented. ECF 45 at 155.

Taken together, Plaintiff has alleged a custom "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

### 2. Deliberate Indifference

Independently, the office is liable under the deliberate indifference standard of *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Connick*, 563 U.S. at 61. Under this theory, a municipality is liable when it is "deliberately indifferent" to a "known or obvious" risk that its failure to train or supervise will result in constitutional violations. *Canton*, 489 U.S. at 390.

The office received repeated, escalating notice of the risk: suppression motions challenging Pedroza's Fourth Amendment violations, dismissals on the day Pedroza was subpoenaed to testify, dismissals "in the interest of justice," and ultimately a judicial finding of lack of probable cause in the Southerland case in February 2025. ECF 45 at 117–118, 239. The two declinations—Rodriguez in May 2021 and Medina in September 2022—are particularly significant. ECF 45 at 143. The office *itself recognized* that certain Pedroza stops lacked sufficient basis, evaluated those cases, and said "no, we will not prosecute this." Yet it never built any institutional response. It handled the problem case-by-case and implemented none of the safeguards identified in ECF 45 at 155.

*Connick*'s single-incident holding is precisely what distinguishes this case. The Supreme Court found the plaintiff's theory insufficient because he could not show a pattern. 563 U.S. at 62.

Civil Action No. 7:25-cv-00393

Here, the pattern is documented across eight years, two law enforcement agencies, and twenty-five cases. Whether these facts ultimately prove deliberate indifference is a question for summary judgment or trial. At the pleading stage, Plaintiff has alleged specific facts—case numbers, dates, documented outcomes, judicial findings—that collectively establish both a widespread custom and the office's deliberate indifference to its consequences. The motion to dismiss should be denied.

## V. ABSOLUTE PROSECUTORIAL IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIMS

### A. Municipal Defendants Have No Immunity Under § 1983

As a threshold matter, absolute prosecutorial immunity is *legally irrelevant* to Plaintiff's Seventh Claim (Monell municipal liability against Palacios in his official capacity). As the Fifth Circuit held in *Burge*: "Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit—either absolute or qualified—under § 1983." 187 F.3d at 466–67 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993)). *See also Owen v. City of Independence*, 445 U.S. 622, 657 (1980) (a municipality has "no immunity from damages liability flowing from its constitutional violations").

In *Burge*, the Fifth Circuit reversed the district court's dismissal of the Monell claim on absolute immunity grounds precisely because "the district court erred in granting summary judgment for the District Attorney in his official capacity on the basis of his absolute prosecutorial immunity because that form of personal or individual immunity is not available in an official capacity suit." 187 F.3d at 467. This holding is directly on point. Prosecutor Defendants conflate the immunity available to individual prosecutors with the liability of the DA's office as a governmental entity. The Seventh Claim challenges institutional customs, not individual prosecutorial decisions. Absolute immunity has no application.

11

## B. John Doe's Pre-Filing Conduct Was Investigatory, Not Advocative

Plaintiff's Eighth Claim targets Defendant John Doe in his individual capacity for the charge-specific failure to verify whether loperamide is a controlled substance before filing charges. Prosecutor Defendants contend that this conduct—reviewing police reports and incorporating them into charging documents—constitutes "professional evaluation of the evidence assembled by the police" entitled to absolute immunity under *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Mot. at 11–13.

Prosecutor Defendants quote *Buckley* selectively. In *Buckley*, the Supreme Court drew a sharp line between advocacy and investigation:

> "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in *searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested*, on the other hand."

*Buckley*, 509 U.S. at 273 (emphasis added).

> "When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same."

*Id.* at 276.

The Court further explained that the prosecutors in that case "were acting not as advocates but as investigators searching for clues and corroboration that might give them probable cause to recommend an arrest" and that "[s]uch activities were not immune from liability at common law." *Id.* at 271.

The Supreme Court was explicit: "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial." *Id.* at 276. And: "That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial." *Id.*

12

Defendant Doe's task was to determine *whether a crime existed*—specifically, whether loperamide is a controlled substance under Texas Health & Safety Code §§ 481.102–105. That is not "professional evaluation of evidence" in the advocate's sense. It is a *ministerial administrative task*—checking a laboratory result against a statute—that any paralegal, intake clerk, or detective could perform. It is the functional equivalent of a detective checking whether the substance found at a crime scene is illegal before recommending charges. If a detective performing that task would receive only qualified immunity, so must a prosecutor performing the identical function. *Buckley*, 509 U.S. at 276.

Moreover, no probable cause for the loperamide charge *ever* existed, because possessing loperamide is not a crime. The "advocacy" phase never lawfully began. One cannot be an "advocate for the State" in prosecuting a non-crime. *See Burns v. Reed*, 500 U.S. 478, 492–93 (1991) (prosecutors receive only qualified immunity—not absolute immunity—for giving legal advice to police about whether probable cause exists to arrest, because that function is not "intimately associated with the judicial phase of the criminal process").

## C. The "Clerical Error" Characterization Is Improper on a Motion to Dismiss

Prosecutor Defendants assert that "[t]he listing of loperamide on the complaint at issue, rather than methylphenidate, should best be understood as a clerical error not rising to the level of a violation of his constitutional rights." Mot. at 4. This is an improper factual argument on a 12(b)(6) motion. Defendants are asking the Court to *reject* Plaintiff's well-pleaded allegations and instead *credit* their own alternative explanation—the precise opposite of what *Twombly* and *Iqbal* require at this stage.

Plaintiff's well-pleaded facts allege that Defendant Doe *filed* charges for possession of loperamide, that loperamide is not a controlled substance, and that Defendant Doe maintained those charges from August 31, 2023 through February 1, 2024—more than five months. ECF 45 at 159. Whether the filing constituted a "clerical error" or deliberate indifference is a factual question for discovery and summary judgment, not a basis for dismissal under Rule 12(b)(6). The Court

must accept Plaintiff's allegations as true and draw all inferences in Plaintiff's favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Furthermore, even accepting Defendants' "clerical error" theory arguendo, it does not defeat the claim. Under *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024), a Fourth Amendment malicious prosecution claim may proceed as to any charge that lacks probable cause, even if other charges in the same proceeding are supported. The loperamide charge—whether filed by error or indifference—lacked probable cause because loperamide is not a controlled substance. The charge independently justified detention, bail conditions, and the stigma of being labeled a drug offender facing multiple counts. Plaintiff suffered distinct, cognizable harm from the facially void charge regardless of its origin.

Prosecutor Defendants' motion does not cite or address *Chiaverini*. This omission is significant. *Chiaverini* is the controlling Supreme Court precedent on charge-specific malicious prosecution analysis, decided in 2024. Its absence from Defendants' brief suggests they have no answer to the charge-specific theory that undergirds Plaintiff's Eighth Claim.

## VI.  THE JOHN DOE CLAIMS ARE NOT TIME-BARRED

### A.  Equitable Tolling Preserves Plaintiff's Claims

Prosecutor Defendants argue that the statute of limitations for claims against the unknown ADA expired on February 1, 2026, and that relation back under Rule 15(c) is unavailable because naming a John Doe defendant reflects lack of knowledge rather than mistake. Mot. at 2. Plaintiff acknowledges that the Fifth Circuit in *Jacobsen v. Osborne*, 133 F.3d 315, 320–22 (5th Cir. 1998), has generally held that John Doe substitutions do not relate back under Rule 15(c)(1)(C). However, Defendants' SOL argument fails for two independent reasons.

### 1. Plaintiff Exercised Due Diligence

Texas equitable tolling principles apply in § 1983 cases. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas'

14

equitable tolling principles also control." *Id.* Under these principles, equitable tolling is warranted where a plaintiff diligently pursues identification of an unknown defendant but is prevented from obtaining that information. *See Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (finding equitable tolling warranted where plaintiff filed suit before limitations expired and diligently sought to discover identity of Doe defendant through discovery requests).

Plaintiff's diligence is demonstrated by the following timeline:

- **August 8, 2025:** Plaintiff filed this action—approximately six months before the February 1, 2026 limitations deadline—identifying the John Doe ADA with specificity as the individual who filed the criminal complaint on August 31, 2023 in Cause No. CR-23-09932-A. ECF 1.

- **November 21, 2025:** In the Second Amended Complaint, Plaintiff again identified Defendant Doe with specificity, noting that "the signature on the charging instrument is illegible" and committing to "amend this Complaint to substitute the true name immediately upon identification through initial disclosures or discovery." ECF 45 at 215.

- **December 29, 2025:** Plaintiff directly emailed Prosecutor Defendants' counsel, Leigh Ann Tognetti, requesting identification of the ADA responsible for the intake screening and filing of the loperamide charge. Plaintiff stated: "To avoid unnecessary 'John Doe' litigation and the 'relation back' issues your office has previously raised, I would appreciate if you could provide the names of the Assistant District Attorneys responsible" for the relevant charges. Plaintiff specifically identified the cause numbers and the relevant conduct. Counsel did not respond with the requested identification.

- **Post-SOL:** Plaintiff filed a Motion for Court-Ordered Identification, requesting the Court compel the DA's office to disclose the identity of the ADA who filed the complaint.

This timeline demonstrates that Plaintiff did not "slumber on his rights." He filed suit six months early. He identified the Doe defendant with maximum specificity. He directly asked opposing counsel for the name *before* the limitations period expired. And when counsel refused

to provide the name, Plaintiff sought the Court's intervention. The DA's office *possesses* this information—it is their own employee who filed their own charging document—and has withheld it despite a direct, pre-SOL request. An institutional defendant should not be permitted to withhold a name it exclusively controls and then argue the clock ran.

### 2. The DA's Office Had Actual Notice

Even under the strict *Jacobsen* framework, the purpose of the limitations period—"preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)—is fully served here. The DA's office has been on notice of this lawsuit since service of the original complaint. The office knows exactly which of its employees filed the criminal complaint on August 31, 2023. No surprise, lost evidence, or faded memories are at issue.

### B. Even If the John Doe Claims Fail, the Monell Claim Is Independent

Critically, even if this Court were to dismiss the individual-capacity claims against John Doe (Claim 8), Plaintiff's Monell claim against Defendant Palacios in his official capacity (Claim 7) is *entirely independent*. The Seventh Claim challenges institutional customs that existed regardless of which specific ADA handled Plaintiff's case. The customs are proven by the twenty-five Pedroza cases spanning eight years, the office's own declinations to prosecute, the multiple dismissals and suppression hearings, and the continued prosecution of the pattern through Southerland in 2025. ECF 45 ¶¶117–118. The identity of John Doe is relevant to Claim 8 but irrelevant to Claim 7.

## VII. DEFENDANTS MISCHARACTERIZE PLAINTIFF'S WELL-PLEADED ALLEGATIONS

Prosecutor Defendants repeatedly distort the nature and scope of Plaintiff's claims. These mis-characterizations should not go unanswered.

16

## A. Plaintiff Does Not Demand "Elaborate Investigations"

Prosecutor Defendants characterize Plaintiff's allegations as demanding that "the DA's office should have conducted elaborate types of investigations into Trooper Pedroza to include officer-credibility tracking against all of Pedroza' prior cases, cross-case pattern analysis of prior Pedroza cases, implementation of a drug substance verification protocol, and independent verification of Trooper Pedroza's investigation." Mot. at 5.

This is a straw man. Plaintiff does not allege that the DA's office was required to conduct "elaborate" investigations. Plaintiff alleges that the office failed to implement *basic, minimal safeguards* that required negligible resources:

- **Video review:** Equipment already existed in the office. ECF 45 at 155.

- **Officer credibility tracking:** Required only a basic spreadsheet or database entry. ECF 45 at 155.

- **Cross-case pattern analysis:** Required "only word-search functions across digital files." ECF 45 at 155.

- **Substance verification:** Required "consulting statutes available online" and "minutes" of effort. ECF 45 at 155.

- **Enhanced review procedures:** Required "only internal policy memoranda." ECF 45 at 155.

These are not "elaborate" measures. They are the bare minimum one would expect of any office responsible for initiating criminal proceedings that deprive citizens of liberty. By characterizing these basic safeguards as extraordinary demands, Prosecutor Defendants implicitly concede that the office implemented *none* of them.

## B. Plaintiff's Theory Is Custom, Not Respondeat Superior

Prosecutor Defendants appear to suggest that Plaintiff seeks to hold the DA's office vicariously liable for the actions of an individual ADA. Plaintiff does not. The Monell claim is based on per-

sistent, widespread customs that operated as the *moving force* behind Plaintiff's injuries—customs maintained over eight years across twenty-five cases. This is precisely the type of municipal liability *Monell* was designed to reach. 436 U.S. at 694. The distinction between respondeat superior (barred) and custom-based liability (permitted) is the central holding of *Monell* itself.

## C. The "Blind Filing" Custom Is Proven by the Office's Own Conduct

Prosecutor Defendants dismiss the "Blind Filing" custom as conclusory. Mot. at 3. But Plaintiff has alleged specific, concrete facts demonstrating the custom's operation:

- The office prosecuted twenty-three Pedroza cases over eight years containing verbatim identical scripts without flagging the pattern. ECF 45 at 138–139.

- The office *declined to prosecute* two Pedroza arrests (Rodriguez, May 2021; Medina, September 2022)—demonstrating it recognized certain Pedroza stops lacked sufficient basis—yet failed to implement any tracking system to flag his future cases. ECF 45 at 143.

- The office filed charges against Plaintiff for possession of loperamide despite possessing a laboratory report identifying the substance. ECF 45 at 146–147.

- Within a nineteen-day window (August 31 to September 18, 2023), the office rubber-stamped two facially deficient cases against the same Plaintiff from two different agencies (DPS and McAllen PD). ECF 45 at 153.

- After Plaintiff's case was dismissed, the office prosecuted Southerland under the same pattern, resulting in dismissal with explicit judicial findings of lack of probable cause in February 2025. ECF 45 at 110.

These are not "conclusory allegations." They are specific facts, supported by case numbers, dates, and documented outcomes, that collectively establish a widespread, persistent custom. Whether these facts ultimately prove deliberate indifference is a question for summary judgment or trial, not a basis for dismissal at the pleading stage.

18

Civil Action No. 7:25-cv-00393

## VIII.  CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Prosecutor Defendants' Motion to Dismiss in its entirety.

Plaintiff's Seventh Claim (Monell municipal liability) targets administrative customs—not prosecutorial decisions—and Defendant Palacios acted as a county policymaker when maintaining those customs.  The Eleventh Amendment does not bar this claim, Palacios is a "person" under § 1983, and municipal defendants have no immunity from damages liability.  Plaintiff's Eighth Claim (individual capacity against John Doe) targets investigatory conduct—verifying whether a substance is controlled—not advocacy, and is therefore subject to qualified immunity analysis, not absolute immunity.  The statute of limitations was equitably tolled by Plaintiff's diligent pre-SOL efforts to identify the Doe defendant.  And even if Claim 8 were dismissed, Claim 7 stands independently.

Respectfully submitted,

Angel Adalberto Alanis

Plaintiff, Pro Se

1107 N Bethel St

Roma, TX 78485

956-379-8874

a4alaniz@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, a true and correct copy of this Response in Opposition

19

Civil Action No. 7:25-cv-00393

was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Angel Adalberto Alanis